Renner and Miller v. LTI Trucking Services, Incorporated, number 5-10-0287. The party's ready to proceed. Ms. Rembush? Yes. You may proceed. Good morning. May it please the Court that I may come in? My name is Jill Rembush. I represent LTI Trucking Services in this retaliatory discharge case filed by complainants. As the name might suggest, LTI Trucking Services is a company that operates here in Illinois. It has over-the-road truckers, long-deal local drivers. It started operating in October 2005. At that time, it purchased the assets of a different company that was also operating as a trucking company called Lanter. An employee of Lanter formed his own company, bought the assets of Lanter, and Lanter really stopped operating. The plaintiffs worked for Lanter at the time of the events in this case, but they were on modified light duty. Now, employers in the workers' compensation context have modified light duty programs that they're allowed to do per statute. It involves putting employees who have work-related injuries with that employer on a modified or light duty assignment. The purpose is to facilitate the return to work, to allow the employee to get used to coming back to work. Usually, at least in this case, it involved kind of giving the employee busy work. The goal is just to get them back in the workplace. You pay them, but the goal is to transition them back and shorten the workers' compensation claim duration. So there's a cost that goes along with paying the employee to do what you might not otherwise have them do, but the benefit is that it reduced the cost of the workers' compensation claim. Now, the plaintiffs were not provided permanent employment with LPI trucking services. Is there a disputed question about that? Yes, there was. And I'm trying to be careful with my language. We characterized it as we never hired them, and if we did, we didn't intend to. They characterized it, oh, yes, you intentionally hired it. They at least accidentally went in and worked three or four days before. That was what the judge concluded, I think, and I'm not disputing that. If I mix my words up, it's not because I've been letting it be the case for too long, I think. But in any event, they were not offered permanent employment, and they filed suit alleging that they had been discriminated against on the basis of these workers' compensation claims. Now, of course, the plaintiff making such a claim has to establish that they were hired or reached that conclusion, that they were fired, but they also have to establish a discriminatory motive. Did they get paid for these three or four days by the defendant company? Not at the time. That was the subject of Counts 3 and 4 in the lawsuit. It was a wage claim. One of them got $182, and the other one got $100. So we are not appealing that portion of the judgment. So they didn't get paid at the time. That was consistent with LTI's position that they were not employees? Yes. Correct. So, again, the ultimate issue in this case is LTI's motive in making the employment decision, regardless of how we characterize it. The motive was the claim. And on this point, LTI tried to use evidence of how it had treated 11 other employees. Between September 30, 2005, really when Atlanta stopped operating, it had 13 employees on its payroll who had a history of pursuing workers' compensation claims. LTI hired 11 of them and offered them permanent positions. The only two that were different were the two plaintiffs in this case, and they were different from the other 11 only in that they were in light duty. They were in a modified duty assignment. The others were all in regular full-time positions. Now, the court held that the evidence was inadmissible, and the court primarily relied upon the NEC decision. Of course, LTI argued that evidence of conduct on other occasions is relevant to prove motive, intent, habit, or practice. But the court, relying on NEC, held that it was inadmissible. And this case, first of all, NEC stands for the proposition that the evidence is admissible to prove motive or intent. And moreover, this case is distinguishable from NEC. In NEC, it was a different kind of evidence, and it was offered for a different purpose. And the evidence in NEC was a lay opinion of reputation. It wasn't evidence of a specific treatment of a specific person like we have in this case. And moreover, in NEC, the evidence was offered to prove a routine practice or a habit, and we were not offering that sort of evidence. So the NEC court concluded that the evidence at issue in that case was insufficient evidence of a habit or routine practice, but certainly did not hold that that entire category of evidence is inadmissible. Well, in NEC, one of the items of evidence at issue was a list of favorably resolved workers' compensation claims. But again, you're on the agency. Right, to show that they – we pay our workers' comp claims. But it was offered in the context of treating them fairly, a fair treatment. It was a shop steward's opinion of fairness based upon having reviewed them. So it was an opinion based upon prior treatment. But, Your Honor, in this court, in Reinach, on very similar circumstances in this case, again, held that evidence of treatment of other employees is relevant to prove motive and intent. In Reinach, the plaintiff sought to introduce evidence of how firmly they treated other workers' compensation claimants. And this court held that that evidence was admissible to prove evidence of motive or intent. And, Your Honors, I would submit that the evidence in our case is even more probative than the evidence was in Reinach. And we're not talking about events that occurred years ago or something that's very far removed in time. We're talking about contemporaneous events of 11 out of 13 people who are different only in the type of position that they had. And if the plaintiffs are arguing – Okay, now, just a minute. Let me ask you a question on the facts, okay? Those other 11 were not currently off on a workers' compensation claim. That is correct. They had previously had workers' compensation claims. These two plaintiffs were on light duty and had pending workers' compensation claims. Yes and no. Okay. They were on light duty. They had not actually filed claims. They had sought medical treatment. Their claims were filed later. And for all 13, the claims were actually filed against the predecessor corporation. Correct. No claim was ever – there was never any risk of a workers' compensation claim being filed against LTI. But at issue here was how LTI was treating the employees. Yes. Correct? Correct. So how does the fact that the predecessor corporation – well, let me back up. Okay. How does the fact that they took no negative action against people who at some point – I don't think we know right now how long ago – had workers' compensation claims show fair treatment or whatever or lack of discrimination for the two who are off on a workers' compensation claim right now? Because, Your Honor, what we have is LTI was faced with a list of employees. And 13 of them had previously – these plaintiffs had previously pursued workers' compensation benefits. They did not have a claim pending at the time. They were just on light duty. And 11 others who had previously filed claims, been on light duty, and come back to work. The allegation in this case is that LTI has discriminatory animus against people who have previously pursued workers' compensation rights. This is not a case where LTI was taking an action to avoid a claim being filed against it. Because they were never going to have to pay the cost of any of these claims. The plaintiffs' claims were never going to be chargeable to LTI. The issue is, do they have a discriminatory animus against people who previously have pursued workers' compensation rights? And there was a list of 13 people, and 11 of them were given permanent jobs, only two who were not were those for whom there was no permanent assignment. So I think it is relevant, because it shows actions that they were taking and what was motivating them at that time. If they truly had a discriminatory animus against people who had previously pursued workers' compensation cases against other employers, they wouldn't have hired any of those 11. But they hired every one of them. And I think it's at least relevant to what their motive was. To exclude it all together, I think, resulted in prejudice to this defendant. Couldn't there be a discriminatory animus against those with pending claims? They didn't have a pending claim. Not against this employer? Not against anybody. They hadn't filed a claim against Lanter, either. They had just sought medical treatment. They had sought benefits. They were contemporaneously seeking benefits under the Act, which is protected conduct, right? Yes, it is protected conduct, Your Honor. But I think with all due respect, it's a distinction without a difference. Well, and LTI said, we've got our own temporary job-like duty deal, but we're not going to give it to you because you're not our employee. Right. That goes back to the business rationale for having a modified duty program. These modified duty programs involve basically giving somebody busy work. Alice Miller testified that she thought she was entitled to a permanent job where she got to sit in the break room and read a paper and walk around the parking lot. You're giving an employee busy work and paying them, incurring a cost. But you do that because, under the statute, you're allowed to do it to have a corresponding benefit of reducing the cost of your workers' compensation claim. LTI was never going to have to pay the workers' compensation claim. Even if it was filed, that was going to go back to Lanter. So it was going to have a cost outlay to pay somebody to do busy work. Those light-duty positions then weren't going to be available to its own employees who had workers' comp claims, so it was going to be a cost with no benefit. You might as well pay them to stay home. And it is no different than saying if you were in a car wreck outside on your personal time, you can't have the light-duty positions. That's just how the modified duty program works. It's available to people who have injuries for that employer to reduce that employer's workers' compensation costs. And the program is completely pointless and meaningless if you're paying people who don't have claims against you. So, Your Honor, we believe that for that reason, this evidence was relevant. And it bore directly on the employer's motive, and it was prejudicial to the defendants who excluded it. I think it's also important to note, again, with respect to the weight of the evidence, that this was not a case for plaintiffs to use any direct evidence of a discriminatory motive. They were relying upon the mere inference that they had previously sought workers' compensation benefits while at Lanter, and that they were thereafter not kept or fired by LTI. So in a situation like that where you have no direct evidence and the employer offers a legitimate non-discriminatory reason, the plaintiff, to sustain their burden, has to establish that that rationale is pretext or non-believable. And in this case, I don't believe the plaintiffs did that. To the contrary, the plaintiffs in this case admitted to the very facts underlying the decision. They admitted that the light-duty positions were temporary assignments that facilitate the return to work. They admitted that the only people who got to use a light-duty program were people injured for that employer. So having admitted that those very things were true, I don't believe that they met their burden to establish that that rationale was not believable or that it was mere pretext. There was no evidence to dispute that when the plaintiffs admitted to the underlying facts. No, there was evidence that the new employer, through its representatives on more than one occasion, came in and said, we're hiring all employees of the old employer. There was evidence that... You know, Your Honor, I'd have to say that, yes, there was evidence of that. And then it was only later when they discovered that these two were there on light-duty from workers' comp that they decided they weren't going to hire all of the employees. They wouldn't hire those two. Your Honor, I don't believe... I mean, that happened. I don't believe that that... I don't believe what... Your Honor, with all due respect, I don't think that characterization is accurate. The plaintiffs admitted, and I think your question highlights what I think is kind of an internal inconsistency in their claim. They admit that LTI knew about their workers' comp history when it hired them. So it knew that they had previously filed claims. So, again, if their theory is that LTI has a discriminatory animus, LTI knew about those claims. LTI never would have hired them. And that would have been perfectly lawful. In Illinois, it's not unlawful to refuse to hire somebody because of workers' compensation claims. So they could have turned them away. But what they allege is that LTI hired them with knowledge of the claims and then five days later terminated them because of the existence of the claims that they knew about when they hired them. That simply makes no sense. So what we have here is plaintiffs who have admitted that these light-duty programs have a limited use and not everybody is eligible to use the position. We have a defendant who has offered evidence of a nondiscriminatory motive to plaintiffs who were unable to overcome or establish that that was prejudicial, excuse me, that it was pretextual or not believable. So, Your Honor, I believe that the judgment was against the manifest way of the evidence and that the judgment on Counts 1 and 2 in favor of the plaintiffs should be reversed. Thank you. Commandant. Thank you. Good morning. May it please the Court. I'm from Bush. Your Honors, this is the judgment from a bench trial. So, basically, we're looking to see is the verdict supported by the manifest way of the evidence on the two issues raised here. There's no issue on appeal about these two individuals being employees of LTI. That issue had to have been resolved in our favor because the judgment was in our favor on all four counts. It wouldn't have afforded any wages on Counts 3 and 4, is what you're saying, if the trial court hadn't decided they were employees. Exactly, Your Honor. Okay. So, that's not an issue. So, getting into this list of employees, Nick Civello is the president and 100% shareholder of LTI. He testified, basically, that his intent was that on September 30th, he had so many employees, the next day, October 1st, LTI was going to have all those same employees doing the exact same jobs the next day. So, basically, he was bringing everyone along with lock, stock, and barrel. I want to talk about what Ms. Rimbush raised about what LTI knew. The two plaintiffs, Renner and Miller, reported to a safety manager, Steve Mays. Steve Mays was very familiar with their situation from Lanter with their claims. However, Nick Civello, who was the new president and the decider for LTI, had no idea anything about their claim. First thing he knew about Alice Miller and Dennis Renner being on more counts was Wednesday, October 5th, when Steve Mays came to him and said, we've got these two employees with claims against Lanter. So, when LTI brought everyone over, they didn't look through these 13 employees and say, gee, they have a workers' comp claim, we'll bring them, we won't bring them. They decided, we're bringing everyone over. What changed was when Steve Mays went to Nick Civello and said, we've got these two people with these serious work comp cases. So, the evidence of hiring really isn't at issue, because at that point, the plaintiffs had already worked three days, the employer-employee relationship was formed, and you couldn't unring the bell and unhire them at that point. If you were going to get rid of them after three days, that was a termination and a firing. So the fact that all these other people were hired, there was no evidence that it was even ever, their files were reviewed or that there was even any knowledge that anyone had workers' comp claims when they were hired. Moving on. So, what you're saying is there's no evidence in the record that the new employer made any kind of conscious decision based on prior workers' compensation claims. Correct, Your Honor. The evidence was that we were going to bring everyone and have everyone keep doing the same jobs. And so your argument is if that's the case, if there was no decision made based on that, how can it be evidence of motive? Correct. So, another issue, too, I think, why this is just plain not relevant or of very limited relevance, is that even the defendant LTI alludes to it in their brief, and the court alluded to it already. These people that they hired and that they kept, they were people that could do full-duty work. So, essentially, this evidence, all it shows is that we're only going to discriminate against people that have workers' comp claims that it affects their ability to work or they have medical restrictions. So, again, it's of very limited relevance, if any, because the other 11 employees, their situation is just distinguishable. There was no evidence ever presented that the medical restrictions the plaintiffs had prevented them from doing the jobs which they claimed they were terminated from. The plaintiffs, Plaintiff Miller, worked 20 hours per week, 4 hours a day, doing office clerical work. Brenner did a light-duty shop assistant job, basically refueling trucks, running errands, running parts, that sort of thing. There was no evidence that they couldn't perfectly do those jobs. At the meeting the evening before they were terminated on October 5th, there was no discussion that these employees weren't performing well, they were unable to do their job, that we needed to cut jobs to reduce costs. There was no legitimate business reason to get rid of them. The sole factor at that meeting that was discussed was these people have these serious work comp claims against Lantern. Why would that affect the defendant? How would it affect the defendant? Well, it just goes to show that there was no non-discriminatory... It wouldn't affect them monetarily, right? Right. I mean, they were paying them, or should have been paying them minimum wage for the hours that they were working. I mean, the workers' comp claim was against the prior company. Correct. But the decision to eliminate their jobs, there wasn't a discussion, we need to reduce jobs to cut costs, to cut our bottom line. What was the reason? The reason was these people are a liability that belongs to Lantern, so we don't want to give them a job. We don't think we're responsible for them. But it wouldn't affect them monetarily, right? Not their claim against Lantern. I mean, monetarily the only effect on LTI is, are we going to pay these people minimum wage for Alice Miller to work 20 hours a week and for Dennis... Regardless of whether or not they had a workers' comp claim. Right. But, you know, the discussion was at that point, they got these serious workers' comp claims. They viewed them as a liability and they didn't want them working for them. And again, what type of liability would that be to the defendant? Well, maybe they thought they'd get hurt again. I don't know. But it was clearly the decision to get rid of them was based only on this prior claim. There was no other legitimate reason given. Now, again, going to the intent and the motive, you know, this issue is driven a lot by which witnesses do you believe. It's a credibility issue. And I think there were several instances in the testimony where the trial court could have simply concluded the story that the defendants are telling us just isn't believable. So, first, they say, we didn't hire these people because you have to complete an employment packet to be an employee. Later, they changed their story and admitted, yeah, filling out a packet of paperwork, that's just formality. And as many as 20% of the employees started working for us and were working at least a day without filling out this packet. Another point. They say LTI's modified light-duty position is never offered to anyone other than people injured at LTI, and that this work that they were doing is modified light-duty work. Well, one of those two can't be correct because they worked for three days doing these jobs. So either these jobs that they did were not modified light-duty and were jobs that some other employee could do, or they did allow people, at least the plaintiffs, to do these jobs for three days. And, again, I think going through the steps, even if that is a legitimate, non-discriminatory reason to terminate them, that we want to save this modified light-duty for our employees, there was evidence presented to rebut that. Dennis Renner testified that shortly after he was terminated, he saw in the Belleville News Democrat an ad run by LTI for essentially the same job that he performed as a shop assistant. So essentially they fired him because he had a prior work comp claim against Lehner, and then they go out and advertise to hire a new employee to fill that position. The court could have determined from that evidence that the LTI story just isn't believable. We think the court thinks that their story just made up a reason to get rid of him, and then they went out and hired someone, and it had nothing to do with giving modified light-duty work to workers' comp claimants. And, again, I think looking at Gomez, the Gomez case, you know, this wasn't Gomez. They said the plaintiff met the prima facie case, where five weeks after the plaintiff met that case, or the defendant was notified of an OSHA complaint, five weeks later they terminate the plaintiff. Here, it's the night after this discussion happens about these two people have these workers' comp cases, the next morning they're terminated. Steve Mays, their manager, says the liability for your workers' comp case is with Lehner, and we don't have a job for you. Goodbye. So they're even told the reason they're being terminated is their workers' comp claim. So that's pretty well direct evidence of the motivating factor for the employment decision was this workers' comp claim that they both have. I want to discuss real briefly Connect, or NEC, however it's pronounced. That case says that the type of evidence at issue, a list of treating employees with claims fairly, that stands for the proposition that the trial court properly excluded that evidence. So that supports the trial court's decision in this case, saying that this evidence that goes to the intent and motive, that's really no different than saying we have a policy or a track record of treating claimants of workers' comp fairly. It's really the same issue when it boils right down to it. And again, in Reineck, the Fifth District examined Connect and came to the conclusion that it stood for the proposition that you can't present evidence of how a defendant treats other employees to show a state of mind or an intent or knowledge. In Reineck, the evidence on other instances of how the employer treated workers' comp claimants came in after the employer had presented a, what they claimed was a legitimate business reason for termination. In this case, we never got to that point. They said we never even employed the claimants. Again, they say we never gave you a job. So there was never any reason given for the termination because they say we never even hired you to start with. So if there aren't any other questions, that's all I have. Thank you very much. Thank you, Mr. Manning. Rebecca? I want to first touch on the credibility issues that Mr. Manning raised, and one of them I think is particularly important. He said that the trial court might not have believed LTI because LTI said that they did not hire the plaintiffs because they did not complete an employment package. That was not the evidence before the court. The defendant never offered multiple reasons for why it had not hired these plaintiffs. It always gave the same consistent reason. The evidence Mr. Manning is referring to is, yes, the defendant said we didn't hire them. As evidence of that, we never had an employment package. It was not, the lack of a package was not given as a reason for not hiring them. So I think that's an important distinction since it is important here that there is an undisputed reason given for this decision. And the plaintiffs admitted that these positions were not available to anybody else. Mr. Renner did refer to a paper and had this on the paper for a mechanic, and he also admitted he's not a mechanic, he's a driver. So I don't think that that's evidence that his life-duty positions were made available to others, and I think they both testified that they were aware of no person other than a workers' compensation claimant for Lanter or LTI, the respective employer, being put into a life-duty position. But Mr. Manning said two things that I think are very important. First of all, he said that LTI, that this evidence of these other 11 is not relevant because LTI did not ever go through and look at the list and make a determination, and that's important because what the plaintiffs alleged in this case is that, and I'm quoting, and that's when the decision was made, we're not going to have people here with workers' comp claims and we're not going to have people who filed workers' comp claims against their previous employer. If that's true, LTI would have gone through that list. It would have drawn distinction and made sure it had pulled out only people who didn't file claims. They didn't do that because they didn't care. They hired everybody, whether you had filed a claim or not. And yes, the intention was to hire everybody. That's what Nick Civello testified to. Nick Civello also testified that he didn't know. He thought everybody, when he reached that assumption, was on full duty. And when he was talked to by Steve Mays, he didn't know these people had been there. He thought he was talking about giving the job to an applicant, to them as applicants, and said we don't have these life-duty positions because they're only available for the workers' comp program. And the plaintiffs simply had not established that that was pretext or that that was not a believable explanation. And it is believable in light of their own testimony. And I think when you highlighted an important point, there was no harm, no harm to be suffered by LTI from having these people working simply because they had filed a workers' comp claim. Did they, in fact, advertise for the position, as the public counsel said? No, they did not. They did not. It was a different position. It had been filled by a different employee. Well, the record reflected, I guess, right? Yes. It was a different employee. His name was Otis, I believe, who had worked there during the plaintiff's employment. It was its own stand-alone position. He left. They advertised the position. He then came back. They pulled the act. He was in a regular position. These were specific. This was created work. These individuals did not occupy a specific position. They were given busy work. So there is no, oh, this is a life-duty assignment. You do these tasks. Here's another one. You do these. They were given busy work, and they wanted that to be their permanent job. And finally, Mr. O'Banion stated that the rationale, when you asked what difference does it make, he said, well, maybe that they thought there would be a risk that they'd hire a future claim. That rationale could follow for every one of the 11 who had filed a previous claim, and that's why the evidence is relevant. Their argument is you were afraid that previous workers' compensation claimants would follow their previous path and file another claim. That wouldn't have been true just for the plaintiffs. It would have been true for every one of the 13. And the fact is LTI didn't care. It didn't even look at the list. It drew no distinction. The only problem with these two individuals was that they wanted a position that did not exist. They wanted to be paid in perpetuity to read the paper in the break room and to walk around the parking lot. And LTI had no reason to incur that cost because it received no benefit. It received nothing in return. And for that reason, we believe they've offered a valid non-discriminatory reason and that the judgment in favor of the plaintiffs on counts 1 and 2 is against the weight of the evidence, and we ask that you reverse that. Thank you. Thank you both for your briefs and your arguments. We'll take this matter into advisement.